## THE MAYOR AND ALDERMEN OF JERSEY CITY Ads. ÆNEAS FITZPATRICK.

1. When a city charter makes payment or a tender of payment of damages assessed, a prerequisite to the acquisition of title in lands taken for a street, the acquiescence of the land owner in the entry of the city upon such lands, and a demand of such damages, is not a waiver of the prerequisite of payment so as to vest the title in the city.

2. The waiver of conditions precedent must be strictly proved; *contra* as to conditions subsequent.

3. If the land owner acquiesced in the taking the lands and the making of improvements thereon, though no legal title will pass, there may be relief in equity.

This was an action of ejectment.

The defendants claimed title under the plaintiff, their contention being that they had acquired the fee in the premises by force of their charter, having taken the land for a public street.

The material facts in evidence were as follows:

In 1867, the corporate authorities of the city of Bergen took the requisite steps to extend Jackson avenue over the land in question. These proceedings were regular, and an assessment of the plaintiff's damages being duly made in July, 1868, the same were confirmed by the board of aldermen, and the extension was declared to be a public street. Subsequently the board passed a resolution directing the treasurer to pay the awards in question. This resolution was afterwards reconsidered and rescinded. In 1869 a resolution was passed to pay one of the owners of land along the line of extension his award.

In 1868 the construction of a public sewer was commenced through this part of Jackson avenue, which was completed in the spring of 1870.

Since the summer of 1868, the premises had been used as a public street.

It was shown that the plaintiff knew of the application to

have Jackson avenue extended, and examined the maps showing the award of damages to the land owners, and was aware that the sewer was being built.

In the year 1870 he applied to the city authorities for the amount awarded him, and in January, 1871, presented his petition, reciting that his lands had been taken and were now being used as a public street, and claiming payment of the damages awarded to him.

Argued at November Term, 1872, before BEASLEY, Chief Justice, and Justices BEDLE, DALRIMPLE and SCUDDER.

For the plaintiff, *Jacob Weart.*

For the defendants, *J. Dixon.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The defendants set up that they have acquired from the plaintiff a legal title to the premises in dispute. It was, at the trial, satisfactorily shown that the proceedings requisite under their charter to give the city the fee in the property for the purposes of a public street, had been taken up to the point of a payment of the damages, which had been awarded to the plaintiff. This act of payment, it is admitted, has not been performed; and the only substantial question which has been raised, is whether such act has not been dispensed with by the plaintiff himself. That the statute regulating these proceedings requires payment of these damages, as a prerequisite to the vesting of the title in the city, is incontrovertibly clear. This is the provision in question, viz. : " That upon completing the report aforesaid, of the commissioners of assessment, assessing the value of the lands so taken, and the damages thereby, the city treasurer shall tender and pay to the owner of said lands, if a resident of the city, the amount of such assessment due him; but if such owner is not a resident of the said city, or upon inquiry he cannot be found therein, or is a

lunatic or idiot, or if for any other lawful cause he is incapacitated to receive the same, or if such owner will not accept the same and sign a proper receipt therefor when tendered, then the treasurer shall make affidavit of such facts, and file the same with the city clerk; and the board of aldermen shall, after inquiring into the facts of the case, by resolution, direct the amount of such assessment to be placed either in the city treasury or some bank, for the use of the person to whom it may be due; and upon filing such receipt of the owner, or the passing of such resolution by the said board of aldermen, *the said lands shall be vested in the city of Bergen, and the city officers may proceed with such improvement, &c.*

In view of the plain directions of this enactment, it is not necessary to advert to the question that was slightly touched on in the argument before the court, whether the legislature has the power to take lands for public streets without compensation being first made to the owner. For present purposes, it is enough to perceive, in the language just quoted, a manifest intention to require compensation to be made to the land owner. By force of this law, land for a public use cannot be taken *in invitum*, except by pre-payment or a tender of the statutory indemnity. Consequently, as I have already remarked, the only inquiry is on the point of the alleged waiver by the plaintiff of this prerequisite of payment.

The circumstances relied on are, that the plaintiff permitted the defendants to take the premises in question for the public use, and that he made demands upon the city for the moneys awarded to him. But I have been entirely unable to perceive how either or both of these facts can have the effect of passing a legal title to the lands in controversy. It is very apparent that such facts may give the defendants a strong claim to the title in a court of equity upon payment of the consideration awarded; because, before that tribunal the transaction can be enforced in the mode in which both parties contemplated its performance, that is, by force of a

decree the plaintiff would get his money and the defendants the land. But here, before this court of law, the defendants claim the title without having paid, and without even now tendering the money. To such a result, I do not see the faintest trace of a consent on the side of the plaintiff. He gave no consent to the entry upon his lands by the defendants. By the doing of that act, they became mere trespassers. The acquiescence of the plaintiff in this invasion cannot, at law, affect his title, because he had the right to rely on the statutory condition, that before such title could be taken from him, his damages must be paid. An inference from such a circumstance, that it was the intention of the land owner to let the title of his property pass away from him before a receipt of his consideration, would be most unreasonable. Nor does the other fact, that he demanded the damages awarded, evince a purpose to yield his title before the payment of the moneys due to him. The statute declared that the payment of these moneys should be a condition precedent to the acquisition of title by the city. It is not app'rent, therefore, how a demand of the performance of such conditions precedent can be a waiver of such performance. It is to be borne in mind that there is a marked distinction in the legal doctrine of waiver—when applied to conditions that are to create an estate, and when applied to those that are to destroy an estate. In the former class of cases, where the estate is to arise in the doing of a certain act, there is no rigor in requiring such act to be reasonably performed; and the consequence is, that in order to constitute a waiver of the performance of such a condition, the intention to give up the right must be indisputable. All the cases cited stand on this ground. The strongest case in favor of the doctrine contended for by the defence, is that of *Leathe* v. *Bullard*, 8 *Gray* 545. The facts were these: The grant was in consideration of certain sums to be paid monthly to the grantor and his wife during life, and the deed contained a condition that it was not to take effect until the grantee had executed a bond with sureties to secure the payments. This bond was

never executed, but the grantee was put into possession, and for more than two years paid the monthly installments, and it was held that the estate had vested on the ground of an implied waiver of the condition. It will be at once perceived that the acts of the grantor in this case were of such a character as not to be consistent with fair dealing, unless upon the assumption that he had dispensed with the execution of the condition precedent. The money that he had taken did not belong to him, if the estate in the land had not passed to the grantee; the unavoidable inference, therefore, was that he had discharged the grantor from his obligation to give the bond. This case, I think, is reconcilable with the rule that a waiver of the execution of a condition precedent must, in point of intention, he clearly made out. With respect to conditions subsequent, a different doctrine prevails. Such conditions are not favored in law, and their rigorous exaction is regarded as a kind of *summum jus*. They tend to destroy estates already vested, and, consequently, the doctrine of waiver when applied to them, receives a more liberal and equitable interpretation. The cases in this line would mislead, if used with respect to conditions precedent.

In the facts of the present case, I do not discover anything which has been done by the plaintiff, which, reasonably interpreted, can be considered as indication of an intention to dispense with the payment of the money due him as a prerequisite to the vesting of the title to the premises in the city of Bergen. The consequence is, that the city has no defence to this action at law. Their rights are equitable, and they must seek another forum.

The rule must be discharged.

CITED in *Jersey City* v. *Fitzpatrick*, 3 *Stew. Eq.* 97; *Gardner* v. *Jersey City*, 5 *Stew. Eq.* 586; *Mayor, &c., of Jersey City*, v. *Gardner*, 6 *Stew. Eq.* 622.